E-FILED
Wednesday, 18 December, 2019 03:48:09 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| NATHAN HICKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cv-3018 |
| | ) | |
| PROTECTIVE LIFE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION**

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Protective Life Corporation's (Protective Life) Motion for Complete Summary Judgment and Brief in Support Thereof (d/e 16) (Motion). The parties have consented to proceed before this Court. Notice, Consent, and Reference of a Civil Action to a Magistrate Judge and Reference Order entered July 29, 2019 (d/e 21). This Court further gave notice to the parties that the Court may decide the Motion on a ground not raised by the parties and gave the parties opportunity to submit additional briefing in response to the notice. Opinion entered September 17, 2019 (d/e 25)(Rule 56(f)(2) Notice); see Fed. R. Civ. P. 56(f)(2). The parties have completed their supplemental briefing in response to the Rule 56(f)(2)

Notice. For the reasons set forth below, the Motion is ALLOWED. Defendant Protective Life is granted summary judgment in this case.

## STATEMENT OF FACTS

For purposes of summary judgment, the Court must view the facts in a light most favorable to Plaintiff Nathan Hickey. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). When viewed in that light, the parties' submissions show the following.

On November 8, 2015, Protective Life hired Hickey as an Account Executive. Hickey worked in the Asset Protection Division (Asset Protection or ADP). Asset Protection sold warranty and insurance products to automobile purchasers through automobile dealerships (Dealerships). The products included vehicle service contracts, automobile total loss insurance, credit life insurance, and credit disability insurance (Products). Dealership employees made the direct sales to automobile purchasers. Asset Protection Account Executives worked with existing dealership accounts to increase sales of Products and also secured new accounts. Motion, Statement of Undisputed Facts ¶¶ 1, 3.[1]

---

[1] The Court cites to a party's statement of undisputed fact if the opposing party agrees or does not respond to the assertion that the statement is undisputed. A failure to respond to a numbered statement of undisputed fact is deemed an admission of the fact. Local Rule 7.1(D)(2)(b)(6) and 7.1(D)(3)(A)(5).

During his tenure at Protective Life, Hickey reported to Regional Sales Manager Chris Courtney. Courtney reported to Regional Vice President Matt Keller. Keller reported to Divisional Vice President Kevin Hausch. Hausch reported to Vice President of Dealer Sales Tim Blochowiak. <u>Motion</u>, <u>Statement of Undisputed Facts</u> ¶ 10.

Shortly after beginning his employment at Protective Life, Hickey received Protective Life's Employee Handbook (Handbook) and Code of Business Conduct (Code). Hickey signed a form acknowledging receipt of the Handbook and Code at the time. Protective Life also maintained policies on leave, including bereavement, Paid Time Off (PTO), and FMLA Leave. Protective Life's policy on internal applicants for jobs within Protective Life stated, "Employees who have been in their current position for less than one (1) year or who are not meeting expectations in their current position . . . are not eligible to apply for posted jobs." <u>Motion</u>, <u>Statement of Undisputed Facts</u> ¶¶ 11-13; Motion Exhibits (d/e 17), Exhibit 7, <u>Protective Life Paid Time Off Policy</u>; and Exhibit 9, <u>Protective Life FMLA Leave Policy</u>.

Protective Life initially assigned Hickey a sales territory that included an area from Bloomington, Illinois, to southern Illinois and parts of western Missouri. Protective Life assigned Hickey three existing accounts: Jamie Auffenberg's dealerships, Chris Auffenberg's dealerships (collectively the Auffenberg

Accounts), and the Ike Honda dealership (Ike Honda Account) (all three collectively referred to as the Existing Accounts). Protective Life also allowed Hickey to prospect for business anywhere in the United States. The Auffenberg Accounts were larger than the Ike Honda Account. The Existing Accounts were anywhere from an hour to three hours' drive from Hickey's home. Motion, Statement of Undisputed Facts ¶¶ 7-9.

On September 30, 2016, Hickey notified his superiors by email that he might need time off to care for his ailing grandmother. Courtney forwarded the email to Protective Live Human Resources employee Anne Witte. Witte sent Hickey information regarding his leave options, including PTO, bereavement, and FMLA Leave. Motion, Statement of Undisputed Facts ¶ 20-22.

On November 8, 2016, Hickey's grandmother died. November 8 was also the first anniversary of the commencement of Hickey's employment at Protective Life. Hickey became eligible for FMLA Leave once he completed his first year of employment. Motion, Statement of Undisputed Facts ¶¶ 20-24.

On or about November 16 or 17, 2016, Hickey sought FMLA Leave because he was having issues with anxiety and depression. Protective Life ultimately approved 12 weeks of FMLA leave until February 17, 2017. Motion, Statement of Undisputed Facts ¶¶ 26-27, 34.

While Hickey was on leave, his supervisor Regional Sales Manager Courtney completed reviews of Hickey's employment performance. Courtney completed Hickey's "4th Quarter Goals Check-In" (4th Quarter Check-In") and Hickey's 2016 Overall Performance Ratings (2016 Rating). Courtney marked every business goal on Hickey's 4th Quarter Check-In as "not started." On Hickey's 2016 Rating, Courtney rated Hickey's overall performance as "Inconsistent." A rating of Inconsistent was defined as:

> Employee meets some performance expectations but may have difficulty with consistency or in meeting all performance expectations. May be new to the role or have areas where they demonstrate a lack of skill and/or experience. May require assistance from others to perform job responsibilities. Behavior and/or results inconsistent.

Motion Exhibits (d/e 17), Exhibit 31, 4th Quarter Check-in and 2016 Rating for Hickey.

On Hickey's return to work February 17, 2017, Hickey was assigned as the Account Executive for a different territory. Hickey had the same title, the same manager, and the same pay. Hickey worked with the same team, and Hickey's rate of compensation was guaranteed to not be reduced during the first six months after his return to work. The new territory, however, required Hickey to perform different duties. The new territory did not have established clients such as the Existing Accounts. Hickey had to spend his time solely prospecting for new accounts. Hickey did not view the new territory as an inferior job to the work

he was doing prior to his FMLA leave. Hickey, however, could no longer count on commissions from sales at the Existing Dealerships. Hickey's income would have been based solely on the new business he would have generated during those six months. Hickey believed that his long-term compensation prospects after the six-month guarantee would be far less certain than it was before the FMLA Leave. Motion, Statement of Undisputed Facts ¶ 43; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (d/e 23) (Response), attached Declaration of Nathan Hickey (Hickey Declaration), ¶¶ 23, 27-28.

On February 27 and 28, 2017, Hickey and Witte exchanged emails about the possibility of Hickey applying for a transfer to a company that Protective Life recently acquired called US Warranty. Hickey told Witte that a colleague at US Warranty was waiting on information regarding Hickey and on an application for an open position at US Warranty. Witte explained to Hickey that employees had to be meeting expectations in their current positions to apply for internal transfers to another division of Protective Life. Motion, Statement of Undisputed Facts ¶ 45.

On March 3, 2017, Hickey had a telephone conference call with Courtney and Witte. Courtney presented Hickey with Hickey's 4th Quarter Check-In and his 2016 Rating during this call. Witte told Hickey that due to the rating of

Inconsistent, Hickey was not eligible to apply for transfer because he was not meeting expectations in his current position.  <u>Motion</u>, Exhibit 1, <u>Deposition of Nathan Hickey (Hickey Deposition)</u>, at 158-60.

Upon completing the conference call, Hickey had a separate telephone conversation with Witte on March 3, 2017.  Witte told Hickey that he had to either embrace his role and focus on working successfully under Courtney or decide that it was not working out at Protective Life.  <u>Motion</u>, <u>Statement of Undisputed Facts</u> ¶ 56.

On March 7, 2017, the Asset Protection Division held a conference in Dallas, Texas (Conference).  Hickey attended.  Regional Vice President Keller, Divisional Vice President Hausch, and Vice President of Dealer Sales Blochowiak also attended.  Prior to the Conference, Witte had informed Blochowiak during a regular one-on-one update on ongoing personnel matters that Hickey did not want to work for Courtney, his present supervisor, upon his return from FMLA Leave.  Hickey told at least one attendee at the Conference that he wanted to transfer to US Warranty.  On March 7, 2017, the first day of the Conference, Blochowiak informally asked Hickey to focus on the Conference and to minimize disruptions caused by discussing the possibility of a transfer.  Blochowiak testified at his deposition that he told Hickey something along the lines of "that's the job we have for you."  Hausch agreed that Hickey resisted

working for Courtney after he returned from his FMLA Leave. Motion, Statements of Undisputed Fact ¶¶ 57-60; Motion, Statements of Undisputed Fact ¶¶ 73, 76; Motion Exhibits, Exhibit 4, Deposition of Tim Blochowiak (Blochowiak Deposition), at 13-15, 19-20.[2]

After his informal discussion with Hickey, Blochowiak spoke with Hausch and Keller to consider options if Hickey did not want to be at Protective Life in his current role. Blochowiak then contacted Human Resources. Blochowiak was not contemplating firing Hickey at this time. Motion, Statement of Undisputed Fact ¶ 61.

Later in the day on March 7, 2017, at the Conference, Hickey met privately with Blochowiak and possibly Hausch. Blochowiak told Hickey that he understood that Hickey did not want to work with Courtney and that a transfer was not possible pursuant to company policy. Blochowiak offered Hickey a severance package as a "soft landing" or "soft exit" out of Protective Life. Blochowiak testified in his deposition that he asked Hickey not to engage in any further discussions with anyone regarding his desire for a transfer to US Warranty and to keep the discussion of a possible severance package in confidence while Hickey considered what to do. Blochowiak asked Hickey to

---

[2] Hickey did not admit or deny the Motion's Statements of Undisputed Facts ¶¶ 57-76. Response, at 22. These Statements of Undisputed Fact, therefore, are deemed admitted. Local Rule 7.1(D)(2)(b)(6).

decide within the next couple of days.  <u>Motion</u>, <u>Statement of Undisputed Facts</u> ¶ 62.

Later, on the same day, March 7, 2017, a representative of US Warranty, Randy Rabbit, told Blochowiak that Hickey had approached Rabbit regarding a possible transfer to US Warranty.  Rabbit also sent Blochowiak an email memorializing the substance of what he told Blochowiak.  Rabbit stated in the email that he told Blochowiak the following:  Hickey approached Rabbit about applying for an opening at US Warranty in California; Hickey told Rabbit that he did not get along with his supervisor and did not trust him;  Hickey also told Rabbit that his supervisor set him up to be fired; Rabbit told Hickey that he might want to contact human resources and that Rabbit did not feel comfortable having the conversation; thereafter on March 7, 2017, Hickey continued to approach Rabbit; at one point Hickey approached Rabbit and said, "I really need your help, they offered me $30,000 to go away;" and Hickey said that he did not think that he was being treated fairly.  <u>Motion</u>, <u>Statement of Undisputed Facts</u> ¶ 63,

During the evening of March 7, 2017, or in the morning of March 8, 2017, Protective Life employee Mark Edmundson told Blochowiak that Hickey had told another Protective Life employee, Kristopher Graham, about being offered $30,000 to walk away from his job.  Edmundson later forwarded to Blochowiak

an email from Graham in which Graham reported that Hickey told him about the severance offer.  Motion, Statement of Undisputed Facts ¶ 64.

During the morning of March 8, 2017, at the Conference, Blochowiak told Hickey that he "was at it again" and Blochowiak wanted to be clear with Hickey. Hickey responded that he wanted to be clear with Blochowiak, Hickey said that he believed he was being asked to do something under duress.  Blochowiak told Hickey that he was sorry Hickey felt that way.  Blochowiak asked Hickey to provide an answer on the severance offer so he could get back to the Conference.  Blochowiak decided the matter was escalating and he needed to have another meeting with Hickey.  Blochowiak contacted the Protective Life Human Resources office again.  Motion, Statements of Undisputed Fact ¶¶ 65-66.

On March 8, 2017, at approximately 11:30 a.m., Blochowiak and Hausch met with Hickey.  This meeting occurred after Blochowiak had spoken with Protective Life Human Resources.  Blochowiak told Hickey that US Warranty representative Rabbit told Blochowiak that Hickey came up to him the night before and asked for a position at US Warranty.  Hickey denied it.  Blochowiak also told Hickey that Rabbit said Hickey told Rabbit about the severance offer. Hickey again denied it.  Blochowiak said Rabbit knew the amount of the severance offer and that only Hickey, Blochowiak, Hausch, and one other person

named David knew the amount. Blochowiak ultimately told Hickey that the only job Protective Life had for him was working with his supervisor Courtney. Hickey said that he refused to work for Courtney. At that point the decision was made to fire Hickey. Blochowiak testified that he fired Hickey for lying to him twice when Hickey denied asking Rabbit for a job at US Warranty and denied telling Rabbit about the severance offer, and because Hickey told Blochowiak that he did not want to work for his boss. Motion, Statement of Undisputed Facts ¶¶ 68-69.

Blochowiak was several layers of management removed from Hickey within Protective Life's organizational structure. Blochowiak had no knowledge or involvement in any job performance issues related to Hickey. Blochowiak had no knowledge of Hickey's day-to-day activities during his employment at Protective Life. Motion, Statements of Undisputed Fact ¶¶ 73, 76; Motion Exhibits, Exhibit 4, Deposition of Tim Blochowiak, at 11-13, 41.

On March 9, 2017, Protective Life terminated Hickey's employment, 20 days after he returned to work from his FMLA leave. Courtney was not involved in the decision to fire Hickey and was told about the termination after the termination had already happened. Motion, Statement of Undisputed Facts ¶ 76. Hickey concedes that Protective Life did not terminate his employment in retaliation for exercising his rights under the FMLA. Plaintiff's Memorandum of

Law in Opposition to Defendant's Motion for Summary Judgment (d/e 23) (Response), at 3, 22.

Hickey stated in a declaration he submitted in response to the Motion that he was offered a job at US Warranty before Protective Life terminated his employment. Hickey Declaration ¶ 20. This statement in his declaration contradicts his deposition testimony and the email exchange he had with Witte on February 27 and 28, 2017. Hickey Deposition, at 146; Motion, Exhibit 28, Email exchange between Hickey and Witte dated February 27, 2017 (also identified as Exhibit 17 to Hickey Deposition). A party's self-serving affidavit or declaration that contradicts his own deposition is not sufficient to create an issue of fact. See Kopplin v. Wisconsin Central Limited, 914 F.3d 1099, 1102-02 (7th Cir. 2019). The Court disregards the assertion in Hickey's declaration that he had a job offer from US Warranty. The undisputed evidence shows that Hickey wanted to apply for a transfer to US Warranty but was not eligible to transfer within Protective Life because of his 2016 Rating of Inconsistent.

## ANALYSIS

Protective Life moves for summary judgment. At summary judgment, Protective Life must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most

favorable to Hickey. Any doubt as to the existence of a genuine issue for trial must be resolved against Protective Life. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once Protective Life has met its burden, Hickey must present evidence to show that issues of fact remain with respect to an issue essential to his case, and on which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In this case, Hickey failed to present evidence to show that an issue of fact exists.

Hickey claims that Protective Life interfered with his rights under the FMLA. To overcome summary judgment Hickey must present evidence on every element of his interference claims. Hickey must present evidence that (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. Ridings v. Riverside Medical Center, 537 F.3d 755, 761 (7th Cir 2008).

An employer denies an employee his FMLA benefits if the employer interferes with the employee's use of those benefits. An employer interferes with the use of FMLA benefits if the employer views taking FMLA Leave as a negative factor in employment actions, such as hiring, promotion, or disciplinary actions.

29 C.F.R. § 825.220(c). An employer also interferes with the use of FMLA benefits if the employer fails to restore the employee to the position the employee held before taking leave or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. §§ 2614(a)(10(A) and (a)(1)(B); 29 C.F.R. § 825.215(a).

Hickey argues that Courtney's 4th Quarter Goals Check-In negatively viewed Hickey's use of FMLA leave because Courtney marked Hickey's 4th quarter goals as "not started." Hickey argues that the rating of "not started" affected his overall 2016 Rating of Inconsistent. As such, the interference with Hickey's FMLA rights denied him the opportunity to apply for a transfer to US Warranty. Hickey argues these ratings and the resulting effect on his ability to apply for transfer constituted illegal interference with his FMLA rights.

Hickey also argues that the evidence shows that he was not allowed to return to an equivalent position after his FMLA Leave. Hickey concedes that he had the same title, same supervisor, same compensation guaranteed for the time that he was at Protective Life after returning from the FMLA Leave. Hickey argues that the position still was not equivalent because before the FMLA Leave, he worked a territory that included the Existing Accounts. His worked consisted largely of managing the Existing Accounts. On return, Protective Life assigned Hickey to a different territory that did not have any dealership accounts. He had

to prospect for all new accounts. He argues that he had a reliable flow of commissions before the FMLA Leave from the Existing Accounts, but after his return, he only had a six month guarantee of income, and, after that, his only source of commissions would have been new accounts that he found in those six months. Hickey argues that this evidence shows that he was not returned an equivalent position.

Protective Life submits evidence to challenge Hickey's interpretation of the effect of his evaluations and whether his position after his return from FMLA leave was equivalent to his prior position. The Court need not decide if issues of fact remain on these points because Hickey failed to present evidence to show that he suffered any economic injury as a result of the acts that Hickey identifies as illegal interference.

The Court issued the Rule 56(f)(2) Notice and gave the parties the opportunity to submit additional briefing to address whether Hickey suffered any economic injury because of the Courtney evaluations. Opinion entered September 17, 2019 (d/e 25), at 7-8. The FMLA only allows recovery for economic injuries. The FMLA does not authorize recovery of nominal damages or other non-monetary damages. See Walker v. United Parcel Service, Inc., 240 F.3d 1268, 1277 (10th Cir. 2001) (nominal damages not available under FMLA); see also Cianci v. Pettibone Corp., 152 F.3d 723, 728-29 (7th Cir. 1998) (a

plaintiff may only recover economic damages under the FMLA); but cf., Franzen v. Ellis Corp., 543 F.3d 420, 426 n.6 (7th Cir. 2008) (declining to address the availability of nominal damages under the FMLA);

Hickey concedes that his termination on March 8, 2017 was not in retaliation for his exercise of his rights under the FMLA. Hickey Response, at 3, 22. He further concedes that he received the same level of compensation after returning from his FMLA from the date he returned to Protective Life on February 17, 2017, until his termination on March 9, 2017. Because Hickey did not lose compensation upon his return, and his termination was not in retaliation for exercising rights under the FMLA, the Court questioned how Hickey suffered economically from the claimed interference with his FMLA rights. Opinion entered September 17, 2019 (d/e 25), at 4

In response to the Court's Rule 56(f)(2) Notice, Hickey argues he suffered economically because Protective Life's interference with his FMLA rights caused his employment relationship at Protective Life to fall apart and denied him the opportunity to transfer to US Warranty. Hickey argues that a jury could conclude that, but for the interference with his FMLA rights, his employment relationship at Protective Life would not have fallen apart. As a result, he would not have been fired on March 9, 2017, and he could have transferred to US Warranty.

Hickey's arguments are pure speculation and not supported the evidence. The evidence shows that Blochowiak fired Hickey because Hickey lied to him twice and because Hickey refused to work with Courtney as his supervisor. The claimed interference did not cause Hickey to lie to Blochowiak. Hickey also presents no evidence that he could have transferred to US Warranty prior to his termination on March 9, 2017. Hickey presents no evidence that he was even qualified for a job opening at US Warranty. He only speculates that if he had a better performance evaluation, he could have transferred. Speculation is not evidence and is not sufficient to overcome summary judgment. Austin v. Walgreen Company, 885 F.3d 1085, 1089 (7th Cir. 2018).

As to Hickey's refusal to work with Courtney, Hickey again presents no evidence that the claimed FMLA interference caused Hickey to refuse to work under Courtney. Blochowiak told Hickey in the March 8, 2017 meeting that the only job Protective Life had for Hickey was the current job with Courtney as his supervisor. Hickey refused to accept that position. Hickey lost his job, in part, because of that refusal. Hickey's argument is substantially similar to a constructive discharge argument, that Courtney's interference with Hickey's rights under the FMLA effectively forced Hickey to refuse work for Courtney, and so, forced Hickey to tell Blochowiak that he refused to take the only position available for him, and resulted in his firing.

Hickey presents no evidence that Courtney put him in such a position.  To prevail on constructive discharge theory, an employee must show that "working conditions [have] become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004).  Similarly, to prevail on his theory that Courtney made him refuse to stay in his job, Hickey needed to present evidence that Courtney's interference with his FMLA Leave made his employment situation so intolerable that a reasonable person would have told Blochowiak that he refused to work under those conditions.  Hickey has no such evidence.  Hickey had the same pay for six months.  Hickey admitted the new job assignment was not inferior to his old one.  Hickey had to prospect for work and his future was uncertain, but he presents no evidence that his working conditions were intolerable.  Hickey fails to present evidence that he suffered economically during the 20 days of his post FMLA Leave employment and fails to prove that the claimed FMLA interference caused him to lose his job.

Hickey argues in the alternative that he presented enough evidence to create an issue of fact regarding whether he would be entitled to equitable relief in the form of reinstatement.  The FMLA authorizes the Court to grant equitable relief, such as reinstatement, in appropriate cases.  29 U.S.C. § 2617(a)(1); Harrell v. U.S. Postal Service, 445 F.3d 913, 928 (7th Cir. 2006).  Hickey,

however, fails to demonstrate that reinstatement would be appropriate in this case. Reinstatement is not available if the employer terminated the plaintiff's employment on separate, lawful grounds. See McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 361-62 (1995); Franzoni v. Hartmarx Corp., 300 F.3d 767, 773 (7th Cir. 2002). Hickey concedes that Blochowiak did not fire him in retaliation for exercising his FMLA rights. Hickey further shows no causal connection between the claimed interference and his firing. Hickey's termination was lawful. As such, equitable reinstatement is not available.

Hickey fails to present any evidence of any economic harm from the claimed interference and any evidence that he would be entitled to equitable relief. Hickey, therefore, is not entitled to relief under the FMLA. Protective Life is entitled to summary judgment.

THEREFORE, IT IS ORDERED that Defendant Protective Life Corporation's Motion for Complete Summary Judgment and Brief in Support Thereof (d/e 16) is ALLOWED. Summary judgment is entered in favor of Defendant Protective Life Corporation and against Plaintiff Nathan Hickey. All pending motions are denied as moot. THIS CASE IS CLOSED.

Enter: December 17, 2019                    *s/ Tom Schanzle-Haskins*
                                            Tom Schanzle-Haskins
                                            United States Magistrate Judge